**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**Case No. 8:25-cv-02242-WFJ-TGW**
**(Consolidated with Case No. 8:25-cv-02497-WFJ-TGW)**

**LINCOLN CAPITAL MANAGEMENT, LLC**,

Plaintiff,

v.

**CRISSCROSS CENTER CO.** and **BRICK BY BRICK BUILDS, INC.**,

Defendants.
______________________________________/

**AMERICAN CASUALTY CO. OF READING, PA**,

Plaintiff,

v.

**CRISSCROSS CENTER CO.**;
**BRICK BY BRICK BUILDS, INC.**;
**LINCOLN CAPITAL MANAGEMENT, LLC;** and
**U.S. SMALL BUSINESS ADMINISTRATION**
**c/o SUNSHINE STATE ECONOMIC DEV. CORP.**,

Defendants.
______________________________________/

**ORDER GRANTING PLAINTIFF LINCOLN CAPITAL MANAGEMENT, LLC'S MOTION FOR SUMMARY JUDGMENT AND DISMISSING INTERPLEADER PLAINIFF**

Before the Court is Plaintiff Lincoln Capital Management, LLC's Motion for Summary Judgment as to Plaintiff's Complaint and for Entitlement of Interpleaded Proceeds. Dkt. 30. Defendants Crisscross Center Co. and Brick By Brick Builds, Inc. responded in opposition, Dkt. 38, and Plaintiff replied. Dkt. 43. Plaintiff and Defendants have filed supplemental briefs concerning the judicially noticed Pasco County Circuit Court Order. Dkts. 59, 61. Additionally before the Court is Interpleader Plaintiff American Casualty Co. of Reading, PA's Motion for Discharge as to Deposited Funds, Dismissal from the Action, and Entitlement to Attorneys' Fees and Costs. Dkt. 74. The Court, having reviewed the record and considered the arguments of counsel at the July 9, 2026, and August 18, 2026, hearings, Dkts. 69, 76, and being otherwise fully advised in the premises, hereby makes the following findings of fact:

1. This consolidated action arises from a fire loss that occurred on June 10, 2025, at 16703 Early Riser Ave., Land O' Lakes, Florida 34638 (the "Property"), which is owned by Defendants Crisscross Center Co. ("Crisscross") and Brick By Brick Builds, Inc. ("Brick"). Dkt. 1 at 5, ¶ 17; Dkt. 12 at 8, ¶ 17; Dkt. 28-10.

2. In May 2021, Plaintiff Lincoln Capital Management, LLC ("Lincoln Capital") and Brick entered into two Loan Agreements for the acquisition and development of the Property, including acquisition of the land and construction of a commercial building. Dkt. 28-1 at 2, 26–27, 28, 52–53.

3. In connection with those Loan Agreements, Brick executed and delivered promissory notes in face amounts of $6,692,250.00, Dkt. 28-2 at 2, and $5,353,800.00,

Dkt. 28-3 at 2, together with mortgages, Dkts. 28-4, 28-5, and security agreements, Dkts. 28-6, 28-7, securing the indebtedness (collectively, the "Security Agreements"). The loans matured, after extensions, on May 25, 2023, and a principal balance of $11,309,776.66 remained due. Dkt. 28-14 at 3–4, ¶¶ 9–10, 15.

4. The Security Agreements expressly define the collateral to include "general intangibles, accounts, . . . insurance proceeds payable because of loss or damage, or other property, benefits or rights arising therefrom[.]" Dkt. 28-6 at 3; Dkt. 28-7 at 3.

5. The Security Agreements also authorize Lincoln Capital, as secured party, to take control of insurance proceeds on the collateral and apply them to the obligation or permit their use to repair or replace the collateral. Dkt. 28-6 at 6, § F.1; Dkt. 28-7 at 6, § F.1. Lincoln Capital filed UCC-1 Financing Statements on June 18, 2021, with the Florida Secured Transaction Registry, thereby perfecting its security interest. Dkt. 28-8.

6. On June 16, 2023, Lincoln Capital filed a Verified Complaint for Foreclosure in *Lincoln Capital Management, LLC v. Robin G. Goris, et al.*, in the Circuit Court in and for Pasco County, Florida, Case No. 2023-CA-3726-CAAXES (the "State Court Action"). Dkt. 1 at 6, ¶ 24; Dkt. 12 at 11, ¶ 24.

7. On May 21, 2026, the State Court entered a Final Summary Judgment in Lincoln Capital's favor in the State Court Action on all counts presented, including foreclosure of the mortgages, foreclosure of security interests in personal property,

replevin of personal-property collateral, and damages under guarantees. Dkt. 54-1 at 28–29; Dkt. 55. The Order in the State Court Action states that it is "intended to be a final adjudication on the merits of all issues presented," and the court denied rehearing. Dkt. 54-1 at 30.

8. Entry of the Final Summary Judgment in the State Court Action eliminates Crisscross and Brick's argument that the Court's determination of entitlement to the interpleaded funds should be deferred until after the State Court Action is determined. *See* Dkt. 38 at 13–17; Dkt. 54-1 at 28–29.

9. Crisscross and Brick are the Named Insureds under Business Property insurance Policy No. 7034731721 issued by American Casualty Co. of Reading, PA ("American Casualty"), effective December 31, 2024, through December 31, 2025. Dkt. 28-9 at 17, 59, 112, 118 (the "Policy"). The Policy provides coverage for Business Personal Property ("BPP") and Business Income/Business Interruption and extended period of indemnity ("BINT"). Dkt. 28-9 at 58–61. Its Loss Payment terms provide that payments "will be made to the First Named Insured, subject to the LOSS PAYEES AND MORTGAGEES Condition below." Dkt. 28-9 at 48, § VII.F.

10. The Policy's Lender Loss Payees and Mortgagees condition provides: "The Insurer will pay for covered loss or damage to each specified Lender Loss Payee or Mortgagee, in order of precedence, in accordance with the Lender Loss Payee's or Mortgagee's financial interest in the applicable property." Dkt. 28-9 at 49, § VIII.B.2.

Lincoln Capital is designated as a Loss Payee, Lender Loss Payee, and Mortgagee under the Policy. Dkt. 28-9 at 64; Dkt. 28-11 at 8, ¶ 28.

11. Under the Policy, a "Lender Loss Payee" includes a creditor "shown on the Schedule of Loss Payees or Mortgagees" whose interest is established by written instruments, including "financing statements or security agreements[.]" Dkt. 28-9 at 49, § VIII.B.1.a. The Policy further provides that each Lender Loss Payee and Mortgagee has the right to receive loss payment even though "such Lender Loss Payee or Mortgagee has started foreclosure or similar action on the insured property[.]" Dkt. 28-9 at 49, § VIII.B.3.b.

12. On September 16, 2025, American Casualty filed the Interpleader Action and thereafter deposited in the Court Registry the BPP proceeds of $189,372.61 and BINT proceeds totaling $824,270.90, calculated from $687,776.24 for business income and $136,494.66 for the extended period of indemnity, less the $5,000 disbursement authorized by the Court. Dkts. 26, 51, 53, 66, 70; Dkt. 74 at 4. The total interpleaded funds in the Registry are therefore $1,008,643.51. Dkt. 68; Dkt. 74 at 4, ¶ 10.

13. Lincoln Capital's unpaid indebtedness secured by the Notes, Mortgages, and Security Agreements exceeds $16,429,317.14, which far exceeds and consumes the total interpleaded proceeds. Dkt. 28-14 at 3–4, ¶¶ 13, 15.

14. There is no genuine dispute of material fact concerning entitlement to the deposited BPP and BINT proceeds; entitlement turns on interpretation of the

unambiguous Policy language, the undisputed loan documents, and Lincoln Capital's perfected security interest. Dkt. 29 ¶¶ 1–34; Dkt. 30 at 5–6.

15. Under Florida law, the right to receive insurance proceeds is fixed at the time of loss, and subsequent foreclosure proceedings do not extinguish that right unless the debt is discharged in full. *See In re Cayer*, 150 B.R. 829, 831 (Bankr. M.D. Fla. 1993); *Sea Isle Operating Corp. v. Hochberg*, 198 So. 2d 336, 337 (Fla. 3d DCA 1967). The debt has not been discharged in full, and Lincoln Capital's financial interest therefore consumes the entirety of the interpleaded proceeds.

16. The Court finds that American Casualty acted as a disinterested stakeholder, deposited the full disputed amount in the Court Registry, did not cause or exacerbate the controversy among the claimants, and is entitled to reasonable attorneys' fees and costs from the interpleader funds. *See Prudential Ins. Co. of Am. v. Boyd*, 781 F. 2d 1494, 1497 (11th Cir. 1986); *In re Mandalay Shores Coop. Hous. Assoc., Inc.*, 21 F. 3d 380, 383 (11th Cir. 1994). Dkt. 74 at 5–10; Dkts. 26, 53, 70.

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1. Plaintiff Lincoln Capital Management, LLC's Motion for Summary Judgment as to Plaintiff's Complaint and for Entitlement of Interpleaded Proceeds, Dkt. 30, and Interpleader Plaintiff American Casualty Co. of Reading, PA's Motion for Discharge as to Deposited Funds, Dismissal from the Action, and Entitlement to Attorneys' Fees and Costs, Dkt. 74. are **GRANTED**.

2. Lincoln Capital is declared to be entitled to all BPP and BINT insurance proceeds deposited in the Court Registry in this consolidated action, including the additional $99,403.82 (Ninety-Nine Thousand Four Hundred Three Dollars and Eighty-Two Cents) deposited pursuant to the Court's Order, Dkt. 68, which was deposited after Lincoln's Motion for Summary Judgment.

3. The total amount of the proceeds held in the Court Registry in this consolidated action to which Lincoln Capital is entitled is $1,008,643.51 (One Million Eight Thousand Six Hundred Forty-Three Dollars and Fifty-One Cents).

4. Lincoln Capital stipulates and American Casualty agrees to accept an award of attorneys' fees in the amount of $25,000.00 (Twenty-Five Thousand Dollars), to be paid from the interpleaded funds held in the Court Registry.

5. Accordingly, the Clerk is directed forthwith to disburse the claim proceeds as follows:

a. $983,643.51 (Nine Hundred Eighty-Three Thousand Six Hundred Forty-Three Dollars and Fifty-One Cents) to Lincoln Capital. Payment by check shall be payable to "Lincoln Capital Management, LLC" and delivered in accordance with instructions supplied to the Clerk directly by Lincoln Capital.

b. $25,000.00 (Twenty-Five Thousand Dollars) to American Casualty. Payment by check shall be payable to "American Casualty Co.

of Reading, PA" and delivered in accordance with instructions supplied to the Clerk directly by American Casualty.

c. No stay of disbursement shall be effective absent the posting of a supersedeas bond in the full amount of the $1,008,643.51.

6. Effective immediately, American Casualty is hereby discharged from any further liability or obligation with respect to the BPP and BINT insurance proceeds deposited in the Court Registry in this action.

7. American Casualty is dismissed from this action with prejudice as to all claims relating to the deposited interpleader funds.

8. Other than the interpleader action, there are no pending crossclaims or counterclaims against American Casualty.

9. Nothing in this Order shall be construed to adjudicate, resolve, or preclude any potential claim by Crisscross or Brick on behalf of Jehu Management or any other third party, to the extent they exist, for "personal property of others" under the Policy. Any such potential claim for coverage of personal property owned by third-party tenants is outside the scope of this interpleader action and is expressly excluded from the determinations made herein. While disputed by American Casualty, only Jehu Management has been identified as having a potential claim for "personal property of others" as of the date of this Order.

10. This Order does not disturb any matter expressly reserved by a prior Order of the Court that is unrelated to the competing claimants' entitlement to the BPP and BINT proceeds.

**DONE AND ORDERED** at Tampa, Florida, on September 22, 2026.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record